UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK DAVIS,

    Plaintiff,

vs.

DICK SCOTT DODGE, INC., et al.,

    Defendants.
_____/

Civil Action No.
07-CV-12735

HON. BERNARD A. FRIEDMAN

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION

**and**

## ORDER OF DISMISSAL

This matter is presently before the court on the motion of defendant Affiliated Financial Corporation of Florida ("Affiliated") for reconsideration [docket entry 35] of the order denying the motion of defendant Dick Scott Dodge, Inc. ("Dick Scott") to enforce settlement. Pursuant to E.D. Mich. LR 7.1(g)(2), the court shall decide this motion without oral argument.

The relevant history of this case is summarized in the court's opinion and order denying Dick Scott's motion. *See* docket entry 34. In short, the attorneys in this matter had a series of telephone conversations and email exchanges while attempting to negotiate a settlement agreement. These communications took place from approximately September 11 through November 30, 2007. Specifically, plaintiff's counsel (Taub) indicated in a September 11, 2007, letter to two of the defense attorneys (Weikert and George) that there was agreement to settle the case on the following essential terms: (1) defendants would pay plaintiff $5,750; (2) defendants would refrain

from reporting negative credit information about plaintiff; and (3) plaintiff would pay Affiliated $1,500 to be applied to his car loan. In response, Dick Scott's counsel (Weikert) drafted a settlement and release agreement containing the following terms: (1) Dick Scott would pay plaintiff $5,750; (2) defendant Friendly Finance Corporation ("Friendly") would pay plaintiff $700; (3) Affiliated would refrain from responding to any disputes initiated by plaintiff with any credit reporting agency; (4) plaintiff would execute a new installment contract; and (5) plaintiff would pay Affiliated $3,703.27 within ten days. Clearly, at this point there was no settlement agreement, but only a proposal and a counter-proposal.

In an October 11, 2007, letter to Taub, copied to Weikert, Affiliated's counsel (George) "confirmed our telephone conversation yesterday" agreeing to the following settlement terms: (1) Dick Scott would pay plaintiff $5,750; (2) plaintiff would pay Affiliated whatever amount was needed in order to bring his account current, that amount presently being $2,150.44; (3) Affiliated would refrain from responding to any disputes initiated by plaintiff with any credit reporting agency; and (4) plaintiff would "execute a new installment contract with the same terms, information, and dates as the installment contract dated December 11, 2006." In the previously filed motion papers, there was no evidence confirming that Taub had in fact agreed to these terms.

On November 5, 2007, Weikert emailed a proposed settlement agreement to Taub, George and Best (Friendly's counsel), requesting "comments and changes." The parties have not attached a copy of this version of the proposed settlement agreement to their motion papers. On November 8, 2007, Weikert emailed these attorneys a proposed installment contract, stating the original would be presented to plaintiff for his signature "once we agree that the contract is acceptable." On November 20, 2007, George proposed changes to the installment contract

(regarding the minimum finance charge, the late payment charge, and the prepayment option) and to the settlement agreement (regarding the amount now due to Affiliated, which had in the meanwhile increased to $3,135.66). Ten days later, George sent an email to Weikert, Taub and Best indicating that, based on a telephone conversation with Taub, "It is my understanding . . . that my proposed changes were acceptable to the parties." Attached to this email was a proposed settlement and release agreement that was identical to the one first circulated by Weikert on September 11, except that the amount now due from plaintiff to Affiliated stood at $3,703.27.

After reviewing this history of the parties' negotiations, the court concluded that no final agreement on all essential terms was ever reached because defendants failed to submit evidence showing that Taub agreed to the modifications proposed by defense counsel after September 11, 2007. However, in its motion for reconsideration, Affiliated has submitted additional exhibits, including deposition testimony from Taub, which persuade the court that Taub did accede to these modifications and that a final agreement was in fact reached by November 30, 2007.

George deposed Taub on March 14, 2008. A copy of the transcript is attached to the motion for reconsideration as Exhibit 9. On the critical issue of whether the parties agreed to all material settlement terms, Taub testified that "[a]t some point I represented to [George] and to Mike Weikert that we had reached a settlement" (Tr. 8) and that "Mr. Davis authorized me on his behalf to accept the material terms of a settlement agreement that I think was outlined and agreed to in various writings prior to Deposition Exhibit Number 2 [i.e., the version of the settlement agreement that is attached to Dick Scott's motion to enforce settlement] (Tr. 11). Taub also testified that "the material terms, yes, [plaintiff] approved, and I negotiated with his approval over the period of time between September and . . . whenever he came in, which was probably like December, early

3

January, to sign the document" (Tr. 15). In a letter to his client dated January 7, 2008, Taub wrote that "I am ethically bound to tell you that all of the allegations [contained in defendant's motion to enforce settlement] are, I believe, undeniable" (Tr. 15 and Exhibit 10). Importantly, Taub also confirmed that he agreed in a telephone conversation with George on October 10, 2007, to the settlement terms outlined in George's October 11, 2007, letter (*see* Affiliated's Joinder in Co-Defendant Dick Scott's Motion to Enforce Settlement Agreement, Exhibit 1). Additionally, George has submitted an affidavit averring that Taub agreed to the minor changes George had proposed in his November 20, 2007, email (*see* para 7 of Exhibit 5, attached to Affiliated's Motion for Reconsideration). Finally, counsel for defendant Friendly (Best) has submitted an affidavit averring that he and Taub agreed to settle plaintiff's claim against Friendly as indicated in the final version of the settlement agreement circulated by George on November 30, 2007, i.e., by Friendly making a payment to plaintiff in the amount of $700. *See* Motion for Reconsideration, Exhibit 12.

This additional information persuades the court that by November 30, 2007, all parties accepted the terms contained in the final version of the settlement agreement, a copy of which is attached to Dick Scott's Supplement to Motion to Enforce Settlement [docket entry 26]. The court's earlier, contrary conclusion can no longer stand in light of Taub's deposition testimony and George's and Best's affidavits. Although plaintiff, now proceeding *pro se*, repudiates the settlement agreement and contends that he did not authorize Taub to negotiate these terms, a client is bound by a settlement agreement negotiated on his behalf by his lawyer. *See Capital Dredge and Dock Corp. v. City of Detroit*, 800 F.2d 525 (6th Cir. 1986) ("a third party who reaches a settlement agreement with an attorney employed to represent his client in regard to the settled claim is generally entitled to enforcement of the settlement agreement even if the attorney was acting

4

contrary to the client's express instructions"). As Taub's agreement to the final version of the settlement agreement is, in his words, "undeniable," enforcement of that agreement is inescapable. Accordingly,

IT IS ORDERED that defendant Affiliated's motion for reconsideration [docket entry 35] is granted.

IT IS FURTHER ORDERED that the complaint is dismissed with prejudice and without costs under the terms of the parties' settlement agreement, as contained in the final version of the agreement that is attached to Dick Scott's Supplement to Motion to Enforce Settlement [docket entry 26].[1] The court shall retain jurisdiction for 60 days to enforce the settlement agreement.

s/Bernard A. Friedman _____
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated: April 18, 2008
Detroit, Michigan

---

[1] Obviously, the amount owed by plaintiff to Affiliated in order to bring his account current may have changed in the interim. Due to the passage of time, this amount will have increased unless plaintiff has made payments. Therefore, the dollar figure contained in para. 2B of the settlement agreement will have to be adjusted to reflect the amount now needed to bring plaintiff's account with Affiliated current.